Jason HIMES, Jr., Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 579S137.

Supreme Court of Indiana.

May 20, 1980.

Cordes, Baker & Bodwell, Jim C. Cordes, Connersville, for appellant.

Theodore L. Sendak, Atty. Gen., Rollin E. Thompson, Asst. Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was tried by jury and convicted of battery as a Class C Felony, Ind. Code § 35–42–2–1 (Burns 1979 Repl.), and attempted rape as a Class A Felony, Ind. Code §§ 35–41–5–1 and 35–42–4–1 (Burns 1979 Repl.). He was sentenced to imprisonment for a term of eight (8) years upon the battery conviction and for a term of twenty-five (25) years upon the charge of attempted rape. His appeal presents the following issues:

(1) Whether the trial court erred in refusing to appoint a fingerprint expert to aid the defense.

(2) Whether the trial court erred in overruling defendant's motion for a continuance which was premised upon his contention that he was "surprised" by the State's use of fingerprint evidence. .

(3) Whether the trial court erred in overruling defendant's motion to suppress evidence of an allegedly impermissibly suggestive pre-trial photographic identification procedure.

(4) Whether there was sufficient evidence to support the jury's verdict on the charge of attempted rape.

(5) Whether the trial court erred when it failed to provide the jury with a verdict form for a lesser included offense.

\*    \*    \*    \*    \*    \*

## ISSUE I

██  In response to a discovery motion and order, the State on November 15, 1978, notified the defendant that a latent fingerprint had been found at the scene of the crime but that it could not be identified as the defendant's print. Subsequently, on or about November 25th, the prosecutor notified defense counsel that further investigation had revealed that the aforementioned latent print was of the defendant's finger and that a State Police expert would so testify upon the basis of a standard ten-reference point methodology. At first opportunity, on November 27, 1978, the defendant filed a motion asking that the court appoint a fingerprint expert to analyze the State's fingerprint evidence and to testify upon behalf of the defendant and further that the trial date of November 28, 1978, be continued until such time as such expert shall have been appointed, and shall have had time and notice to be available to testify. The motion was argued immediately and denied, both as to the appointment and as to the continuance. .

Defendant has cited cases from other jurisdictions holding that an indigent defendant has a right to expert witnesses, at State's expense, but he had not equated these cases to the case before us. The subject has been treated in considerable detail at 34 A.L.R.3d 1256, and it appears that, absent a statute, a rule or due process requirements of fundamental fairness, an indigent defendant is not entitled to the employment at public expense of experts to assist his attorney in the preparation of his case. The entitlement to such assistance has been generally held to rest in the discretion of the trial court. The determination must be made in the context of the case, and we are of the opinion that only a clear abuse of that discretion will loom as a denial of due process. .

In *People v. Watson*, (1966) 36 Ill.2d 228, 221 N.E.2d 645, it was held to be reversible

error for the trial court to have refused an indigent defendant the assistance of a handwriting expert. The state's forgery case rested upon identification testimony of persons who had no previous acquaintance with the defendant. Prior to the trial, Watson's court-appointed counsel filed a motion requesting that the court provide him with funds in order to obtain the services of a questioned document examiner. Attached to the motion was an affidavit of counsel stating, in substance, the state's evidence mentioned above, that the state had not obtained the opinion of an expert as to whether Watson had signed the check or whether his fingerprints appeared thereon. The affidavit continued with an allegation that an examination by a qualified expert would disclose that the defendant had not signed the document, that his fingerprints were not upon it and that, in counsel's opinion, the testimony of such an expert was essential to provide him an adequate defense.

In *State v. Taylor*, (1968) 202 Kan. 202, 447 P.2d 806, a case remarkably similar to the one before us, the court held that it was not error to have denied the defendant funds and a continuance to enable him to obtain an expert to examine and evaluate the state's fingerprint evidence. That court said that, from the record, it appeared that the defendant's expert had not been employed, had made no examination of the evidence and that the nature of his testimony, therefore, was undetermined and speculative. Continuing, the Kansas court said that there was nothing in the record to indicate that the testimony of a second expert would be helpful to the defendant and that mere hope or desire to discover some shred of evidence, when not coupled with a showing that the same is reasonably available and necessary for a proper defense, does not support a claim of prejudicial error.

We are not unmindful that defense counsel was disadvantaged somewhat by the brevity of the state's notice that the fingerprint evidence had been re-evaluated. But we are of the opinion, nevertheless, that that factor standing alone, did not require the grant of the services sought, at state's expense. There was nothing to indicate that the purpose of the defendant's motion was other than exploratory; and we are of the opinion that, under such circumstances, the grant of the services requested, at the state's expense, were not necessary to assure an adequate defense and, therefore, were not essential to the minimum requirements of due process. It has been held that due process does not necessarily require the appointment at public expense, of any expert that a defendant believes may be helpful to his defense. *Roberts v. State*, (1978) Ind., 373 N.E.2d 1103; *Smith v. Baldi*, (1953) 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549.

## ISSUE II

Defendant next contends that the trial court erred when it denied his motion for a continuance. Defendant's trial was scheduled to begin on November 28, 1978. On November 24 or 25, the State informed defense counsel that it intended to introduce fingerprint evidence linking defendant to the crimes charged. On November 29, 1978, defendant moved for a continuance in order to prepare for "cross-examination or rebuttal" of the fingerprint technician. The motion was denied. Defendant contends that the State's disclosure constituted "surprise evidence which could not have been anticipated with ordinary prudence."

█ The ruling on a motion for continuance not based upon statutory grounds is within the sound discretion of the trial court and will be reversed only for an abuse of discretion. *E. g., Aron v. State*, (1979) Ind., 393 N.E.2d 157. Even with a showing of "surprise" evidence, the defendant must also show that he was harmed by the trial court's denial of his motion for a continuance. *King v. State*, (1973) 260 Ind. 422, 296 N.E.2d 113. In *Popplewell v. State*, (1978) Ind., 381 N.E.2d 79, 82, we stated:

> "The purpose of granting a continuance under such circumstances is to compensate for surprise by permitting the aggrieved party time to learn and to prepare. It is not to be regarded as a 'bonus'

awarded without regard to its need in the furtherance of fair trial rights."

Because the fingerprint evidence was not presented until the final day of trial, defendant here had approximately six (6) to seven (7) days to prepare for its introduction. Defendant has made no showing that given additional time he could have disputed the State's evidence. Without a specific showing of the manner in which additional time would have aided or avoided harm to defendant, there was no abuse of discretion in the trial court's ruling. *See White v. State*, (1975) 263 Ind. 302, 330 N.E.2d 84.

### ISSUE III

Following the attacks, the two victims were taken to police headquarters where they gave a description of their assailant, including that he had "bad" or "rotten" teeth. They viewed a photographic display but made no identification at that time. Approximately three days later, the victims viewed seven additional photographs, and they both selected defendant's picture.

Defendant contends that the trial court erred when it overruled his motion to suppress evidence of the prior photographic identification. It does not appear that the defendant also moved to suppress the victims' in-court identifications, although he now asserts that those identifications were tainted by the allegedly impermissible suggestivity of the pre-trial procedure.

The claim of impermissible suggestivity is partially grounded upon the defendant's contention that the victims were aware that a suspect had been arrested at the time that the second photographic display was exhibited to them. Defendant fails to direct us to any part of the record that supports this assertion, and our own brief review of the record indicates that this contention is unsubstantiated.

Defendant next argues that it was impermissibly suggestive, after the victims had specifically described his teeth, to display a photograph of him in which his teeth were prominently displayed, while the teeth of the other men portrayed were not conspicuous. Because of this, he asserts that the photographs "could have been no more suggestive had they been pictures of six women and one man."

While we agree that defendant's teeth are conspicuous in the photograph, when viewing the totality of the circumstances, we cannot say that the photographic identification procedure was "so impermissibly suggestive as to give rise to a substantial likelihood of misidentification." *Sawyer v. State*, (1973) 260 Ind. 597, 601, 298 N.E.2d 440, 443, citing *Simmons v. United States*, (1968) 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247.

Here, except for the prominence of the defendant's teeth, the men portrayed in the photographic display were similar in appearance. Additionally, the record reveals that one victim saw the defendant four times on the day of the attacks, and the other victim saw him at least twice on that day. Both saw him during daylight hours. Both were very close to him when he pointed a gun at them and when they were forced to fight with him in order to escape. Without hesitation, each chose the defendant's photograph after rejecting all photographs in the previous display.

We believe that these factors, taken together, indicate a high degree of reliability and we, therefore, find no error in the admission of the evidence disclosing the extra-judicial identification. Accordingly, the issue concerning the correctness of permitting the in-court identifications is moot.

### ISSUE IV

Defendant contends that the verdict on the attempted rape charge was not warranted because there was insufficient evidence to show a "substantial step toward the commission of the crime." On appeal this Court will not weigh the evidence nor judge the credibility of the witnesses. *Robinson v. State*, (1977) 266 Ind. 604, 365 N.E.2d 1218. Only the evidence most favorable to the State and all reasonable inferences to be drawn therefrom will be

considered to determine if there existed sufficient evidence of probative value to support the determination of guilt beyond a reasonable doubt. *Baum v. State*, (1976) 264 Ind. 421, 345 N.E.2d 831.

■ The evidence most favorable to the State reveals that on August 14, 1978, Mindy Cornett, Stephanie McAvenue, and Mary Dearman planned to visit a campsite owned by McAvenue. They had automobile trouble and stopped at a garage in New Trenton, Indiana. Defendant, who was in the garage at the time, told his nephew, Wayne Lunsford, that they should follow the young women.

The women continued to Cedar Grove, Indiana, where they stopped at a package liquor store. Defendant followed McAvenue into the store and spoke to her, but she ignored him. He was behind McAvenue as she left the store. The women continued to the campsite, and the defendant and Lunsford followed.

After the women had arrived, they looked out the window of their trailer and saw the defendant outside. They called the police, but the defendant and Lunsford left shortly before the police arrived. Lunsford testified that the defendant stated that he intended to return to "see those girls."

The women stayed a few hours and then prepared to return to Ohio. As McAvenue was gathering her belongings, she went outside and saw the defendant with his arm around Dearman's neck; he was holding a gun to her head. McAvenue went to Dearman's assistance, and Dearman was able to escape.

Defendant then ordered McAvenue into a nearby tent. McAvenue stated, "I'm a decent girl. What do you want?" Defendant "smirked" and responded, "You know what I want." He threatened to shoot her if she ran. He added that he would leave the other women alone if McAvenue would go with him. She offered him her money, purse, and car, all of which he refused.

Defendant then lunged at McAvenue and grabbed the front of her slacks. As the two scuffled Dearman reappeared. Defendant struck her on the side of the head with the gun. Dearman and McAvenue were then able to run to an approaching automobile and escape.

Ind. Code § 35–41–5–1(a) provides in pertinent part:

"A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted * * *."

Defendant does not argue that the evidence was insufficient to show that he possessed the necessary intent, and we believe that the evidence did, indeed, indicate that he was "acting with the culpability required." Thus, the only question is whether his actions constituted a "substantial step toward commission of the crime."

In *Zickefoose v. State*, (1979) Ind., 388 N.E.2d 507, 509, we stated: "While it is well settled that mere preparation is not sufficient to constitute an attempt to commit a crime, it is becoming increasingly common for legislative enactment to provide a penalty for conduct which goes beyond mere preparation." Where intent is clear, the question of what constitutes a substantial step is a question of fact for the jury. *See Comments* to West's Annot. Ind. Code § 35–41–5–1.

Here, the defendant went beyond "mere preparation" when he followed the women to their campsite and then returned with a gun. Where, as here, defendant's intent was established, his act of pointing the gun at McAvenue and directing her into the tent was sufficient to support the jury's finding that defendant took a substantial step toward carrying out that intent.

## ISSUE V

■ The trial court, by final instruction No. 5, in effect advised the jury that attempt to commit rape by force was a Class "B" felony and that rape by deadly force was a Class "A" felony. He was convicted

of the Class "A" felony. He asserts that in view of the included offense instruction, it was error for the court not to have submitted a verdict form upon the Class "B" felony as well as upon the Class "A" felony. He argues that, having no form on the Class "B" offense, the jury was unable, on its own to return verdict of guilty upon the Class "B" felony.

We have previously held that when the jury was permitted to retire without sufficient forms of verdict, the number of forms submitted cannot be considered as reversible error where the record does not show that the accused tendered or requested any other forms. *Bowman v. State*, (1934) 207 Ind. 358, 192 N.E. 755; *Kirkland v. State*, (1956) 235 Ind. 450, 134 N.E.2d 223. The defendant made no objection to the forms of verdicts submitted and tendered none.

It appears that if there were error in this regard it was in giving the Class "B" instruction, as the only evidence of the crime submitted was that a rape was attempted by use of deadly force. This was not refuted. The defense offered alibi evidence. It thus appears that there was no evidence to which the Class "B" felony instruction would have been applicable. *Hash v. State*, (1972) 258 Ind. 692, 284 N.E.2d 770.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.