Richard L. PARR and Michael Gourley,
Appellants (Defendants Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1083S363.

Supreme Court of Indiana.

March 9, 1987.

Susan K. Carpenter, Public Defender, C.H. Gardner, Deputy Public Defender, Eugene C. Hollander, Sp. Asst. to the Office of the State Public Defender, Indianapolis, for appellants.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

Defendant-appellants, Michael Gourley and Richard L. Parr, appeal their convictions, following jury trial, of robbery, a

1. Ind.Code § 35–42–5–1.

class A felony.[1] Both defendants were sentenced to thirty-three (33) years imprisonment.

The following issue was presented by both Parr and Gourley:

1. Whether the trial court erred in denying their joint motion to suppress?

In addition, Parr presents the following additional issues:

2. Did the trial court abuse its discretion in denying Parr's motion for continuance to obtain private counsel?

3. Did the trial court abuse its discretion in denying Parr's motion for separate trial?

4. Did trial court err in ordering Parr's pre-trial transfer from Greene County to the Indiana Department of Correction?

5. Was the evidence insufficient because of inherent unbelievability?

6. Was the sentence unreasonable?

*Issue I*

Defendants first claim that error occurred when the trial court denied their joint motion to suppress. Defendants now contend that the denial of this motion raises the following questions: 1) was the detention of the defendants and of Parr's vehicle unlawful because of the absence of probable cause, 2) was the "show-up" pretrial identification impermissibly suggestive, 3) did the "show-up" taint the victim's in-court identification testimony. As to the search of Parr's vehicle, defendants contend that the failure to grant the motion to suppress resulted in the subsequent improper admission into evidence of a wooden tool handle allegedly used as a weapon. However, the motion to suppress did not specifically raise any issue regarding whether the detention or arrest of the defendants was supported by probable cause. At trial, the wooden tool handle was admitted into evidence without any objection by either defendant. Likewise, no objection was presented to testimony regarding the out-of-court "show-up" or to the in-court identifications of the defendants by the victim. Any error in overruling a motion to

suppress evidence is not preserved unless a timely objection is made when the challenged evidence is offered at trial. *Minneman v. State* (1982), Ind., 441 N.E.2d 673, *cert. denied* (1983), 461 U.S. 933, 103 S.Ct. 2099, 77 L.Ed.2d 307.

While defendants' motions to correct errors did challenge the legality of their detention and resulting identification by the victim, these issues were not presented by objection at trial. A party may not await the result of a trial and then claim an error not raised when there was yet time for the court to take appropriate action, if warranted. *Inman v. State* (1985), Ind., 482 N.E.2d 451.

We find no error on this issue.

### *Issue II*

Defendant Parr next contends that the trial court abused its discretion in denying his motion for continuance to obtain private counsel. On December 15, 1982, Parr appeared in court following his arrest, and his request for appointed counsel was granted. Trial date was then scheduled for April 26, 1983. Defendants Parr and Gourley filed motions for early trial on December 17, 1982, whereupon the trial court rescheduled their trial date for February 17, 1983. One week before the trial was to begin, Parr filed multiple motions seeking separate trial, continuance, withdrawal of his speedy trial request, and further discovery. Parr's motion for continuance asserted grounds other than those enumerated by Ind. Code § 35–36–7–1. It alleged that Parr had been incarcerated continuously from his arrest on December 11, 1982, until he posted bond on February 2, 1983; that since his release he had unsuccessfully attempted to retain private counsel; and requested a continuance to allow him a reasonable opportunity to obtain private counsel of his own choosing. Following a hearing, the trial court denied Parr's motion for continuance, and jury trial commenced February 17, 1983.

Parr contends that he had a right to counsel of his choosing, and cites as supporting authority *Houze v. State* (1982), Ind., 441 N.E.2d 1369, and *Morgan v. State*

(1979), Ind.App., 397 N.E.2d 299. He is mistaken. Our decision in *Houze*, while recognizing a defendant's absolute right to be represented by counsel, holds that a defendant is not necessarily entitled to a change in court-appointed counsel. Similarly, the principles recognized in *Morgan* do not support Parr's contention here:

> While an accused should have an opportunity to secure counsel of his choice when he is financially able to do so, it is nonetheless imperative that he exercise this right of selection at the appropriate stage of the proceeding. *McCraney v. State* (1979) [180] Ind.App. [190], 388 N.E.2d 283; *Atkins v. State* (1977) [175] Ind.App. [230], 370 N.E.2d 985. The freedom of choice of counsel may not be manipulated to subvert the orderly procedure of the courts or to interfere with the fair administration of justice. *U.S. v. Terry* (5th Circuit 1971), 449 Fed.2d 727. A trial court, in the exercise of its discretion, may refuse to allow an accused to replace counsel during or immediately before trial because such a substitution would require the court to grant a continuance. *Wombles v. State* (1979) [270] Ind. [181], 383 N.E.2d 1037; *Magley v. State* (1975), 263 Ind. 618, 335 N.E.2d 811.

397 N.E.2d at 300.

Defendant argues that he was a resident of the State of Illinois, that he had no knowledge of the local attorneys for Greene County where his trial was to be held, and that he had been held at the Indiana State Reformatory, more than one hundred miles away, until January 24, less than a month before trial. At the hearing on his motion for continuance, Parr explained that since his release on bond, he had obtained employment, and unsuccessfully attempted to talk to nearby Indiana attorneys. He further stated that he did not know what it would cost to employ counsel, and that he was unsure whether he could obtain sufficient funds for such employment.

The case of *Collins v. State* (1980), 274 Ind. 619, 413 N.E.2d 264 bears a

striking similarity to the present facts. Notwithstanding his accurate representation by an appointed public defender for approximately three months, defendant sought a continuance one week before trial for the purpose of employing a private attorney. Writing for a unanimous Court, Justice DeBruler observed:

> Appellant had several months in this case in which to employ an attorney of his own choice to conduct his defense. He did not avail himself of this opportunity. He waited instead until shortly before the trial was scheduled, at a point in time when the employment of new counsel would frustrate the trial. Appellant "failed to exercise the right to select his own counsel at an appropriate stage of the proceeding." *Atkins v. State* (1977) [175] Ind.App. [230], 370 N.E.2d 985.

413 N.E.2d at 267, 274 Ind. at 623. In *Vacendak v. State* (1982), Ind., 431 N.E.2d 100, 105, Justice Pivarnik synthesized the rules applicable to review of a denied motion for continuance for the purpose of changing counsel:

> This Court has held that a trial court may refuse to allow a criminal defendant to replace his counsel during or immediately before trial. *German v. State* (1978) [268] Ind. [67], 373 N.E.2d 880; *Magley v. State* (1975), 263 Ind. 618, 335 N.E.2d 811. Failure to grant an untimely request for change of counsel is not error absent a showing by Defendant that he was prejudiced by anything his attorney did or did not do. *Harris v. State* (1981), Ind.App., 416 N.E.2d 902. There is no such showing here. The facts in each case determine whether a denial of request for continuance to obtain counsel is a violation of Article 6 of the Amendments to the Constitution. *Ungar v. Sarafite* 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921. A defendant may not frustrate or disrupt sound judicial administration by a deliberate process of discharging retained or assigned counsel. *The United States v. Hampton* (7th Circuit 1972), 457 Fed.2d 299, *cert. denied*, 409 U.S. 856, 93 S.Ct. 136, 34 L.Ed.2d 101.

The ruling on a motion for continuance not based upon statutory grounds is within the sound discretion of the trial court and will be reversed only for an abuse of discretion. *Himes v. State* (1980), 273 Ind. 416, 403 N.E.2d 1377; *Works v. State* (1977), 266 Ind. 250, 362 N.E.2d 144. In order to demonstrate an abuse of discretion, the record must reveal that the defendant was prejudiced by the failure to grant the continuance. *Dorton v. State* (1981), Ind., 419 N.E.2d 1289.

█ Parr has made no showing that he was prejudiced by the trial court's denial of his motion for continuance.

### Issue III

In his next contention, Parr argues that the trial court abused its discretion in denying his motion for separate trial made one week before trial. Parr asserts that it prejudiced him by forcing him to stand trial with a co-defendant who had a previous criminal record. He also argues that severance was necessary to give him adequate time to retain private counsel.

Parr's motion was based upon Ind.Code 35–34–1–11(b) which provides in part:

> In all other cases, upon motion of the defendant or the prosecutor, the court shall order a separate trial of defendants whenever the court determines that a separate trial is necessary to protect a defendant's right to a speedy trial or is appropriate to promote a fair determination of the guilt or innocence of a defendant.

█ A trial court has discretion to determine whether severance was necessary to insure a fair trial. We will only review its decision for an abuse of discretion. We consider events that actually occurred at trial to determine whether the trial court abused its discretion and not allegations in the motion for severance. *Hodge v. State* (1982), Ind., 442 N.E.2d 1006.

Gourley did not testify at trial and his prior criminal record was not raised at trial. However, Parr argues on appeal that his alibi defense was undetermined because

Gourley did not testify and therefore, he did not corroborate Parr's alibi defense.

 Parr's argument is speculative at best. Parr testified that he was watching television with Gourley in their motel room when the robbery was committed (approximately 9:30 p.m.). The two women who accompanied Parr and Gourley that evening testified that they left the motel shortly after 9:00 p.m. and returned about 9:45 p.m. after driving around town in the van and stopping to get cigarettes. They also stated that Parr and Gourley were watching television when they left and when they returned. While the time period involved and the surrounding circumstances tend to support Parr's alibi, the jury chose to disbelieve these witnesses. In view of the victim's very positive identification testimony and the slight impact Gourley's self-serving testimony would have had in supporting Parr's alibi, we do not find a showing of the prejudice required to prove an abuse of trial court discretion, and therefore hold that the trial court did not err by refusing to grant Parr's motion for separate trial. *Compare, Weans v. State* (1985), Ind., 483 N.E.2d 1388 (a co-defendant's allegedly exculpatory testimony was unavailable because of joinder.)

### *Issue IV*

 Parr argues that the trial court failed to comply with Ind.Code 35–33–11–2 concerning the transfer of prisoners:

35–33–11–1. Transfers for personal safety or safety of others.—Upon motion by the:

(1) Sheriff;

(2) Prosecuting attorney;

(3) Defendant or his counsel;

(4) Attorney general; or

(5) Court;

alleging that an inmate in a county jail awaiting trial ... represents a substantial threat to the safety of others, the court shall determine whether the inmate ... represents a substantial threat to the safety of others. If the court finds that the inmate ... represents a substantial threat to the safety of others, it shall order the sheriff to transfer the inmate

to another county jail or to a facility of the department of correction designated by the commissioner of the department at suitable for the confinement of that prisoner and provided that space is available. . . .

On December 17, 1982, the State moved to transfer the prisoner from the Greene County jail to the Department of Corrections because of the defendant's prior criminal record and inadequate local facilities. Parr filed written objections to transfer and requested a hearing. The trial court ordered the transfer without a hearing.

On appeal Parr contends the trial court was required to make a specific finding that he constituted a substantial threat to others and to hold an evidentiary hearing. He claims he was prejudiced by being unable to participate in preparation of his defense and by being prevented from hiring counsel of his choice.

Parr partially relies on Ind.Code § 35–33–11–2 which states:

The inmate or receiving authority is entitled to a post transfer hearing upon request. The inmate may refuse a transfer if the only issue is his personal safety.

This section applies to a post-transfer, not pre-transfer hearing. Parr did not request a hearing subsequent to transfer.

Furthermore, the trial court's order indicated that defendant should be returned at such times as the trial court deemed appropriate. Defendant did not request to be returned prior to trial for consultation with counsel. Beyond a simple allegation of prejudice, defendant has not presented us with specific facts to support his claim. *Compare, Hurley v. State* (1983), Ind., 446 N.E.2d 1326 (defendant's actions caused transfer and he alleged denial of counsel without articulating specific facts.)

Therefore, we will not reverse on this issue.

### *Issue V*

 Parr contends that the evidence was insufficient to support his conviction because the victim's testimony was "inher-

ently unbelievable." On rare occasions, this Court has impinged upon a jury verdict for such or similar grounds. *Penn v. State* (1957), 237 Ind. 374, 146 N.E.2d 240 ("inherently improbable"); *Gaddis v. State* (1969), 253 Ind. 73, 251 N.E.2d 658 ("uncredible dubiosity"); *Hutchins v. State* (1894), 140 Ind. 78, 39 N.E. 243 ("utterly impossible to believe"). Such contention has often been rejected. *Wilson v. State* (1984), Ind., 465 N.E.2d 717; *Forrester v. State* (1982), Ind., 440 N.E.2d 475; *Wallace v. State* (1981), Ind., 426 N.E.2d 34; *Bentley v. State* (1981), 275 Ind. 67, 414 N.E.2d 573; *Rodgers v. State* (1980), Ind., 422 N.E.2d 1211. The applicable standard was expressed in *Shippen v. State* (1985), Ind., 477 N.E.2d 903, 904:

> This court will override the jury's assessment of credibility only where the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

However, in addressing the issue of sufficiency of evidence, we will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Case v. State* (1984), Ind., 458 N.E.2d 223; *Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

To resolve this issue, we must look to the evidentiary facts favorable to judgment. On the evening of December 11, 1982, two men entered a liquor store in Linton, Indiana. Donald Evans, the store clerk, observed the two men for approximately five or six minutes. The men purchased a six-pack of beer and left. Approximately twenty minutes later, the two men reentered the store. One of the men had a club in his hand and stuck it into Evans's stomach and ordered him to back up and raise his hands. Evans complied. The intruders unsuccessfully attempted to open the cash register, and ordered Evans to open it. After Evans complied, one of the men struck Evans on the head with the club

which was about three feet long and looked like an ax handle. Evans was then struck a second time on the back of the head, and the robbers left with cash from the register. Evans immediately telephoned the police, and then reclined back on the floor because he was dizzy.

Officers Bill Burress and Norman Watson were present at the Linton police station when Evans called to report that he had just been robbed and struck on the head. Burress immediately went to the scene of the crime and observed the victim near the phone, bleeding from the head. Before Evans was removed from the scene by ambulance, he described the two attackers. One was approximately six feet tall and had long dark hair and a mustache. The other man was slightly shorter, with light hair and wearing an army fatigue jacket. Evans also stated that he had been struck with an object similar to a baseball bat. Upon leaving the scene of the robbery, as Burress and Watson were driving past a local motel, they observed a change in position of a van which they had seen earlier in the evening. The van did not have a license plate, and the officers stopped to check the registration. There was a temporary Illinois registration on the windshield in Parr's name. The officers then spoke with the motel manager and checked the motel register. They discovered that the driver was registered as "Perry" and they returned to the van to get information from the registration. As they pointed a flashlight at the permit, it illuminated the interior of the van and the officers saw an object which appeared to be a large tool handle. It was painted red and Watson thought the paint might be blood. The officers called for assistance and several officers including police chief Jesse Martin responded. The chief, accompanied by the motel manager, went to "Perry's" room and knocked on the door. Initially a woman answered, and then Parr, wearing a fatigue jacket, came to the door. The chief questioned him about his ownership of the van and about its registration. Parr and the chief walked to the van and Parr pointed out the temporary permit. At this

point, the chief asked Parr if he owned the club in the back of the van and Parr answered affirmatively. The chief asked to examine the club and Parr consented. Parr opened the van, took out the handle and gave it to Chief Martin. When asked by the chief if he would be staying at the motel, Parr replied that he would be there until morning. The chief asked permission to keep the handle until the next morning, and Parr agreed. The chief radioed to other officers, instructing them to patrol the area closely to see if the van had left. When observed being driven shortly afterward, the van was stopped and found to be occupied by Parr and Gourley, who fit Evans's description of his attackers. Parr and Gourley were placed in handcuffs and taken to the Linton police station.

After Evans was treated and released from the hospital later that night, he was driven to the police station by his employer's wife. Chief Martin had left a message requesting him to view two suspects. Evans arrived at the police station about 1:00 a.m. on December 12, 1982, less than four hours after the robbery. He was placed in a police vehicle with its headlights aimed at an entrance to the station. Defendants, handcuffed and accompanied by two uniformed officers, were brought onto the steps at this entrance, a distance of ten to fifteen feet from Evans, who positively identified defendants as his assailants. During Evans's testimony at trial, Parr and Gourley were again identified as the two men who robbed the store and injured Evans.

While there were minor discrepancies in the testimony regarding whether the robbers were clean shaven and slight variations in the description of their heights, Evans's testimony was generally consistent, clear and believable. From these facts, a reasonable trier of fact could certainly conclude that the defendants were guilty beyond a reasonable doubt.

### Issue VI

 Parr contends that his thirty-three year sentence was manifestly unreasonable because he received the same sentence as

Gourley. The sole basis for his claim is that because he did not actually strike the victim, he was less culpable than Gourley. Parr concedes that he stands in the shoes of his accomplice, but still argues the sentence is disproportionate. The facts show Parr was an active and full participant in the robbery. Considering the nature of the offense and Parr's participation, the sentence is not manifestly unreasonable. Appellate Review of Sentences Rule 2(1).

Judgment affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and PIVARNIK, JJ., concur.