John McINTOSH, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 36A04–9303–CR–81.

Court of Appeals of Indiana,
Fourth District.

Aug. 15, 1994.

Transfer Denied Sept. 28, 1994.

Susan K. Carpenter, Public Defender, Gregory L. Lewis, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Mary Dreyer, Deputy Atty. Gen., Indianapolis, for appellee.

RILEY, Judge.

## STATEMENT OF THE CASE

Defendant–Appellant John McIntosh appeals his convictions on two counts of criminal recklessness,[1] class D felonies, one count of confinement,[2] a class C felony, and one count of theft,[3] a class D felony.

We affirm.

## ISSUES

McIntosh presents the following issues for our review:

1. Whether the trial court committed reversible error in failing to give instructions defining terms of art.

2. Whether the trial court committed reversible error in giving instructions which confused the jury, thereby depriving McIntosh of his due process right to a fair trial.

---

1. IND.CODE 35–42–2–2.

2. I.C. 35–42–3–3.

3. I.C. 35–43–4–2.

3. Whether the trial court gave an erroneous instruction on the issue of criminal confinement.

4. Whether I.C. 35–42–3–3, as applied to McIntosh, is unconstitutionally vague and overbroad.

5. Whether there was sufficient evidence to support McIntosh's conviction for criminal confinement.

## FACTS AND PROCEDURAL HISTORY

In early August of 1989, Donald Cox and Cheryl Ward rented a house near the residence of Ward's mother, Mary Decker Green. Decker Green left on a trip and gave Ward a key to her house.

On August 8, 1989, Cox drove to Decker Green's residence to pick up some items. When Cox arrived at Decker Green's house, he saw McIntosh, Victor Wood, and Wood's girlfriend sitting in a car in front of the house. McIntosh, who was a recent boyfriend of Ward's, exited the car and demanded that Cox return his personal property that Ward had kept. He emphasized his demand by waving a gun in Cox's face.

After following Cox into Decker Green's house, McIntosh became angry. He shot a bullet into the kitchen floor, damaging the floor tile. He then told Cox that he was going to shoot him in the kneecap. He shot at Cox, but Cox was able to jump out of the way. McIntosh then began searching the house for his property. He finally decided to accompany Cox to the house Cox shared with Ward.

When Cox arrived at his house, he pointed out a table and chair which belonged to McIntosh. He promised McIntosh that he would take the table and chair to him on the next day. As McIntosh exited the house, he observed a television sitting outside. He emptied his gun at the television.

Approximately three or four hours after this incident, McIntosh opened the door to Cox and Ward's house and entered uninvited. He was accompanied by his wife, Lori, and a large dog. He took out a gun and shot it into the air. He also threatened to shoot Cox.

Ward rushed upstairs to get her baby and McIntosh followed her. When Cox entered the room, McIntosh placed the gun between his eyes. Cox grabbed the gun, and managed to wrest it away from McIntosh.

Cox then told Ward to take the baby out to the car because they were leaving. The car, however, would not start. McIntosh confronted Cox with a board, and forced him to run down the road to a neighbor's house. McIntosh then grabbed the baby, and stated, "I have your kid by his feet and I am going to drop him on his head." (R. 383). Ward, who was still in the yard, then ran to the neighbor's house to make sure the police were on their way. Shortly thereafter, McIntosh and Lori drove up to the neighbor's house and Lori handed the baby to Ward. About that time, the police arrived and McIntosh and Lori were arrested for public intoxication. Their car was impounded.

On August 9, Cox and Ward went to Decker Green's house to use her phone. Upon their arrival, they observed that the screen door was open and the glass was busted out. As they walked in, they noticed that a VCR and food were missing. Ward and Cox called the police to report the burglary.

Later that day, the police searched the impounded car that McIntosh had driven to Cox and Ward's house. Inside the vehicle, they found the VCR and miscellaneous food items. The items were later identified by Ward as belonging to Decker Green.

McIntosh was charged with two counts of criminal recklessness for pointing the gun at Cox's body and for later pointing the gun at Cox's head. He was also charged with the confinement of Ward's baby and the burglary of Decker Green's home. Finally, he was charged with the theft of Decker Green's property. He was convicted on all counts.

We affirm.

## DISCUSSION AND DECISION

### I. Defining Terms of Art.

At McIntosh's trial, the court gave an instruction which informed the jury that:

The crime of criminal recklessness is defined in part by statute as follows:

A person who recklessly, knowingly, or intentionally performs an act that creates a substantial risk of bodily injury to another person commits criminal recklessness, a class B misdemeanor. However, the offense is a class D felony if it is committed while armed with a deadly weapon.

To convict the defendant, the State must have proved each of the following elements:

The defendant

1. recklessly, knowingly or intentionally

2. performed an act that created a substantial risk of bodily injury

3. to Donald R. Cox

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of criminal recklessness, a class B misdemeanor.

If you further find beyond a reasonable doubt that the act was committed while armed with a deadly weapon, you should find the defendant guilty of criminal recklessness, a class D felony.

(R. 137). The trial court gave similar instructions defining the offenses of theft and criminal confinement. The court did not give instructions defining the terms "intentionally," "knowingly," or "recklessly." [4]

■ McIntosh contends the trial court committed error when it did not *sua sponte* give instructions defining the specific intent terms. McIntosh neither objected to the lack of defining instructions nor tendered instructions of his own. He attempts to avoid waiver by characterizing the court's failure to give the instructions as fundamental error.

In *Abercrombie v. State* (1985), Ind., 478 N.E.2d 1236, our supreme court was faced with this issue when the trial court failed to define "knowingly" and "intentionally" in a trial for burglary and theft. In deciding the issue, the court first stated that, under our penal code, terms of specific intent are "terms of art . . . which have special legal definitions." 478 N.E.2d at 1239 (citing I.C. 35–41–2–2; *Smith v. State* (1981), Ind., 422 N.E.2d 1179). It further stated that the trial court has "a duty to give [ ] instructions defining words of art." *Id.* (citing *Martin v. State* (1974), 262 Ind. 232, 246, 314 N.E.2d 60, 70). The court went on to hold that:

Here, the trial court gave the jury instructions on the offenses of burglary, I.C. § 35–43–2–1, and theft, I.C. § 35–43–4–2; and should have completed them by adding an instruction reciting the statutory definitions of "knowingly" and "intentionally." The instructions as given did however inform the jury that guilt must rest upon a knowing or intentional state of mind. Appellant did not tender a more complete instruction containing the definitions or otherwise raise the incompleteness of instructions to the trial court. No special prejudicial effect of the omission is identified. Under the circumstances we are not persuaded the error in instructions impinged a substantial right warranting reversal.

478 N.E.2d at 1239.

■ In the present case, McIntosh attempts to distinguish *Abercrombie* by establishing the prejudicial effect of the omission.

---

4. These terms of specific intent are defined in I.C. 35–41–2–2, which states:
(a) A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so.
(b) A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so.
(c) A person engages in conduct "recklessly" if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct.

He initially contends that the lack of defining instructions served to deprive him of a fair trial and fundamental due process. Fundamental error is error which, if not rectified, would deny the defendant fundamental due process. *Olson v. State* (1990), Ind., 563 N.E.2d 565, 567. McIntosh's contention is merely a restatement of the definition of fundamental error; it does not provide us with a statement of special prejudicial effect.

McIntosh attempts to show the special prejudicial effect resulting from the failure to define the specific intent terms used in the instructions pertaining to criminal confinement. The trial court instructed the jury that criminal confinement occurs when "a person [ ] knowingly or intentionally confines another person without that person's consent; or removes another person, by fraud, enticement, force or threat of force, from one (1) place to another." The court further instructed the jury that the State had to prove that McIntosh "1. knowingly or intentionally 2. removed Anthony Randall Ward, by fraud, enticement, force or threat of force, from one place to another." (R. 139).

McIntosh contends that the absence of definitional instructions allowed the jury to convict him of criminal confinement even if it believed his defense. He points out trial testimony by defense witnesses indicating that he did not forcibly remove Ward's child from her, but merely returned the child to her after she had abandoned him in her flight from McIntosh's presence. He argues that the instruction given was confusing "because [he] certainly could have been unaware or unintentionally using 'force' to move the child because the child was incapable of moving itself." Appellant's Brief at 26.

The trial court's failure to give definitional instructions did not have the prejudicial effect claimed by McIntosh. If the jury believed McIntosh's contention that he was merely returning the child to its mother, then it could not find that the child was confined by use of force. The result is the same whether the jury had to resort to common usage to define "knowingly" and "inten-

tionally," or whether it was enlightened by definitional instructions and could define the terms by reference thereto.

McIntosh also attempts to show the special prejudicial effect resulting from the failure to define the specific intent terms used in the instruction pertaining to theft. The instruction for theft stated that the offense occurs when "[a] person knowingly or intentionally exerts unauthorized control over property of another, with intent to deprive the other person of any part of its value or use . . . ." The instruction further provided that in order to convict McIntosh of theft, the State needed to prove that he "1. knowingly or intentionally 2. exerted unauthorized control 3. over property of another person Mary Decker 4. with intent to deprive the other person of any part of its value or use." (R. 136).

McIntosh contends that the absence of definitional instructions allowed the jury to convict him of theft even if it believed his defense that he had been given the property as "security" to insure the return of his own property. He argues that an instruction defining specific intent terms would have helped the jury to understand that a person who accepts property as security does not do so "knowingly" and "intentionally."

Again, the trial court's failure to give definitional instructions did not have the effect claimed by McIntosh. In fact, it had no effect. If the jury believed McIntosh's contention that he received the property as "security," then it could not find that his exertion of control was unauthorized. Again, the result is the same whether or not the jury relied on the statutory definition of the specific intent terms.

■ Under *Abercrombie,* it is clear that where a defendant fails to object to incomplete instructions or tender instructions of his own, and establishes no special prejudice from the incomplete instructions, he cannot claim that fundamental error has occurred. As we discussed above, the facts of the present case bring it within the ambit of *Aber-*

*crombie.* Accordingly, McIntosh is not entitled to a new trial on this issue.

## II. *Lesser Included Offenses.*

■ McIntosh was specifically charged with criminal recklessness as a class D felony. The instruction on criminal recklessness given to the jury set out that the offense is a class B misdemeanor if, with criminal intent, a person "creates a substantial risk of bodily injury to another person." The instruction also set out that the offense is a class D felony when it is committed "while armed with a deadly weapon." (R. 137).

■ McIntosh was also charged with criminal confinement as a class C felony. The instruction on criminal confinement given to the jury set out that the offense is a class D felony if, with criminal intent, a person "confines another person without the other person's consent, or removes another person, by fraud, enticement, force or threat of force, from one (1) place to another." The instruction also stated that the offense is a class C felony if "the other person is less than fourteen (14) years of age and is not the person's child." (R. 139).

The trial court submitted verdict forms to the jury which did not allow the jury to enter a verdict of guilty for either criminal recklessness as a class B misdemeanor or criminal confinement as a class D felony. McIntosh contends the trial court committed reversible error in doing so.

McIntosh did not object at trial to the verdict forms or submit any other forms. "[W]hen the jury [is] permitted to retire without sufficient forms of verdict, the number of forms submitted cannot be considered as reversible error [if in fact, there was any error] where the record does not show that the accused tendered or requested any other forms." *Himes v. State* (1980), 273 Ind. 416, 403 N.E.2d 1377, 1382. Furthermore, even if McIntosh had objected to the forms, he still would not have prevailed. It appears that the only error made was the giving of the instructions on the lesser class of offenses, as the only evidence of the offenses submitted was that the criminal recklessness was accomplished by use of a deadly weapon and the criminal confinement was committed against a child of less than fourteen. *See Himes* 403 N.E.2d at 1382 (stating that it was error to instruct the jury on rape as a class B felony when the only evidence was that the rape was attempted by use of deadly force, a class A felony).

## III. *Deviation of Instruction from Charging Information.*

McIntosh contends the trial court committed reversible error in the manner in which it instructed the jury on the offense of criminal confinement. He argues that the wording of the instruction allowed the jury to convict him of an uncharged offense. In support of this argument, he notes that I.C. 35–42–3–3 includes "two distinct types of criminal confinement by encompassing both confinement by non-consensual restraint in place and confinement by removal." *Kelly v. State* (1989), Ind., 535 N.E.2d 140.

■ The information for criminal confinement charged that McIntosh "remove[d] Anthony Randall Ward by force[,] that force being physically grabbing the said Anthony Randall Ward with his hands and carrying said individual from one place to another...." (R. 9). The trial court's instruction stated that

The crime of criminal confinement is defined in part by statute as follows:

A person who knowingly or intentionally confines another person without the other person's consent; or removes another person, by fraud, enticement, force or threat of force, from one (1) place to another; commits criminal confinement, a Class D felony. However, the offense is a Class C felony if the other person is less than fourteen (14) years of age and is not the person's child.

To convict the defendant, the State must have proved each of the following elements:

The defendant

1. knowingly or intentionally

2. removed Anthony Randall Ward, by fraud, enticement, force or threat of force, from one place to another.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of criminal confinement, a Class D Felony.

If the State further proved beyond a reasonable doubt that Anthony Randall Ward was less than fourteen (14) years of age at the time of the offense and was not the defendant's child, you should find the defendant guilty of criminal confinement, a Class C Felony.

The term confine is defined as meaning to substantially interfere with the liberty of a person.

(R. 139).

McIntosh specifically argues that the trial court's instruction is plagued by two errors necessitating reversal of his conviction. He argues that the trial court committed error in quoting the portion of the statute establishing "confinement by non-consensual restraint." He also argues that the trial court erred in including the "threat of force" language in the instruction.

In the *Kelly* case cited above, the defendant was charged by information with "knowingly confin[ing] [the victim] without his consent and while armed with a deadly weapon." 535 N.E.2d at 141. The information did not charge the offense of confinement by removal. The instructions given by the trial court included the statute listing the two separate offenses of confinement and the statement that the State, in order to prove confinement, was required to prove "(a) That the Defendant knowingly confined [the victim]; or (b)

Removed [the victim] by fraud, enticement, force, or threat of force, from one place to another...." *Id.* Our supreme court noted that there was evidence at trial to support a conviction for either criminal confinement by "confinement without consent" or "confinement by removal." *Id.* at 142. It further noted that the charge was only for "confinement by consent" and the general verdict did not indicate the type of confinement upon which the conviction was based. *Id.* It then held that it could not say that "the erroneous instructions in this case did not prejudice the defendant's substantial rights and bring about a verdict of guilty upon an uncharged offense." *Id.* at 143.[5]

In *Gamblin v. State* (1991), Ind.App., 568 N.E.2d 1040, this court was faced with the issue of whether a defendant charged with theft for "exert[ing] unauthorized control over currency of another 'by taking and possessing said currency in a manner other than that [to] which [the] victim had consented,'" was deprived of his rights when the trial court instructed the jury on an additional aspect of theft. 568 N.E.2d at 1045. We noted that an instruction should not be broader than the information filed in a particular case and the jury should not "be permitted to find the defendant guilty of an offense defined by the statute but which was not charged." *Id.* at 1045. We then held that the trial court's extension of the charge by its instruction was reversible error. *Id.*

In the present case, unlike in *Kelly* and *Gamblin*, the jury was properly instructed that the State was required to prove the elements of the exact offense charged. The jury was also instructed that that failure to prove those elements must result in a not guilty verdict. We are convinced that these specific instructions on the State's burden and the jury's responsibility served to negate any possibility of confusion occasioned by the trial court's unfortunate reference to the of-

---

5. In *Evans v. State* (1991), Ind., 571 N.E.2d 1231, our supreme court, relying on *Kelly*, held that a new trial was required where the information charged Evans with kidnapping by confining a jail officer with the intent to aid in the escape of three named prisoners and the instructions at trial referred to the State's burden to prove kidnapping by showing that he confined the jail officer with the intent to aid in the escape of any person.

fense of confinement by "non-consensual restraint."

■ McIntosh contends that the trial court's inclusion of the "threat of force" language in its instruction constitutes error because it allowed the jury to convict him on the "threat" rather than the actual "force" itself charged in the information. Specifically, he argues that:

McIntosh's wife testified in his defense that [Ward], carrying her son Anthony, fled from McIntosh when he came out of Ward's residence carrying a board. While Ward fled, she dropped Anthony in a ditch and left him laying there so that she could join Cox at the neighbor's house. McIntosh and his wife then retrieved the abandoned baby and together they drove it back to Ward at the neighbor's house. From this evidence, the jury could have inferred that McIntosh's "threat of force," i.e. carrying the board, was what precipitated the abandonment and removal of the infant Anthony from one place to another—as opposed to what he was actually charged with: grabbing and carrying Anthony Ward with his hands "by force." In other words, McIntosh was misled into putting on a defense to the narrow crime charged in the charging information: but the expansion of that crime in the jury instruction swallowed McIntosh's defense and allowed him to be convicted because of it.

Appellant's Brief at 41–42. (Citations to record omitted).

We disagree with McIntosh's characterization of what the jury could conclude from his wife's testimony. The threat of force was toward Ward and not toward the person confined. Thus, there was no evidence which would support a conviction of confinement by threat of force. In light of this fact, any error in including the "threat of force" language was harmless. *See Dixon v. State* (1981), Ind.App., 425 N.E.2d 673, 678.

### IV. *Constitutionality of Confinement. Statute.*

McIntosh was charged with knowingly removing Ward's child by force in that he

grabbed the child with his hands and carried him from one place to another. I.C. 35–42–3–3 prohibits the knowing or intentional removal of another person, by force, from one place to another. As we noted in Issue I, the trial court instructed the jury that in order to convict McIntosh, the State needed to prove that he "1. knowingly or intentionally 2. removed Anthony Randall Ward, by fraud, enticement, force or threat of force, from one place to another." The court defined confinement as "meaning to substantially interfere with the liberty of a person." (R. 139).

McIntosh contends the confinement statute was unconstitutionally vague and overbroad as applied to him. He contends that even if the jury believed his version of the facts, i.e. he was merely returning Ward's abandoned child back to her, the jury could have convicted him under the statute. He argues that his return of the child would necessarily have included some exercise of physical force and would have undoubtedly interfered with the child's liberty. Accordingly, he suggests that the trial court should have given an instruction defining "force." [6]

■ A statute is not unconstitutionally vague if persons of ordinary intelligence would comprehend it to adequately inform them of the proscribed conduct. *State v. Downey* (1985), Ind., 476 N.E.2d 121, 122, *reh'g denied.* "The statute need only inform the individual of the generally proscribed conduct, a statute need not list with itemized exactitude each item of conduct prohibited." *Id.* (citing *Hunter v. State* (1977), 172 Ind. App. 397, 360 N.E.2d 588, 595).

The central requirement in vagueness cases is that "there must be something in a criminal statute to indicate where the line is to be drawn between trivial and substantial things so that erratic arrests and convictions for trivial acts and omissions will not occur." *Id.* We must not leave it up to "juries, judges, and prosecutors to draw such lines." *Id.*

■ We find that I.C. 35–42–3–3 is sufficiently specific that no person of ordinary

---

**6.** McIntosh did not tender an instruction defining "force" at trial.

intelligence would be mislead into thinking that a person returning an abandoned child to its parent was committing criminal confinement. Furthermore, there is nothing in the instruction given in the present case which would be misleading.

McIntosh also contends that the criminal confinement statute is overbroad. Although a statute may not be vague, it may be overbroad. *Kerlin v. State* (1991), Ind.App., 573 N.E.2d 445, 447, *reh'g denied, trans. denied* (citing *VanSant v. State* (1988), Ind.App., 523 N.E.2d 229, 233). "An overbreadth challenge asserts that the statute is not drawn in sufficiently narrow terms and foreseeably prohibits legitimate conduct." *Id.*

In making his overbreadth argument, McIntosh primarily reiterates his vagueness argument. Again, his concern is that the statute's literal language prohibits the legitimate return of abandoned infants to their parents. Again, we do not think that a person of ordinary intelligence would interpret the statute in such an absurd manner.

### V. *Sufficiency of the Evidence.*

McIntosh contends that there was insufficient evidence to establish the elements of theft. Specifically, he argues that the evidence fails to show that he had exclusive possession of the automobile in which the stolen items were found.[7] He cites *Strode v. State* (1980), Ind.App., 400 N.E.2d 183, in support of his contention.

In *Strode,* this court held that where "recently stolen property is recovered from a place to which others present had equal access, such evidence *alone* is not sufficient to sustain a theft conviction." 400 N.E.2d at 188 (citing *Turbeville v. State* (1873), 42 Ind. 490). We went on to find that Strode's "incredulous story" was additional evidence which compelled the inference that Strode knew of the presence of stolen property and

was guilty of theft. *Id.* (citing *Vaughn v. State* (1971), 255 Ind. 678, 266 N.E.2d 219; *Linnemeier v. State* (1975), 165 Ind.App. 31, 330 N.E.2d 373).

In the present case, the evidence shows that McIntosh was driving the vehicle in which the stolen items were found. This evidence, standing alone, was not sufficient to sustain his conviction. However, there is also evidence indicating that immediately following his reckless acts toward Cox in Decker Green's kitchen, McIntosh "searched" the house. Additional evidence indicates that McIntosh's wife did not take part in the search of the house or any of the violent incidents that would follow. In fact, his wife was the person who returned Ward's baby to her and attempted to make peace with Cox and Ward.[8] From this evidence, the jury could infer that McIntosh, and not his wife, was the person who took Decker Green's property and placed it in the car. The evidence, when taken as a whole, is sufficient to sustain McIntosh's conviction.

McIntosh also contends that he did not deprive Decker Green of the use of her property as required by I.C. 35-43-4-2 because Decker Green was not home at the time of the taking of the property. He cites *State v. McGraw* (1985), Ind., 480 N.E.2d 552, *reh'g denied,* in support of his contention. In *McGraw,* our supreme court held that the accused did not have the intent to deprive the City of Indianapolis of the use of its computers because the accused's use "cost nothing and did not interfere with its use by others." *Id.* at 554.

In the present case, unlike in *McGraw,* the exertion of unauthorized control over another's property could be, and was, accomplished. Taking someone's property from their house and hiding it in your own vehicle is evidence of intent to deprive that person of

---

7. The vehicle was registered to McIntosh's wife.

8. McIntosh contends that the only direct evidence of theft indicated that his wife took two bottles from Cox and Ward's home. He claims that the State is bound by this evidence. We note that taking the bottles from Cox and Ward's home does not establish that she was involved in any way with the theft and burglary occurring at another residence.

her use of the property. It is irrelevant that the other person was not home at the time the property was taken.

### CONCLUSION

The trial court did not commit reversible error in the manner in which it instructed the jury. Furthermore, there was sufficient evidence to support McIntosh's conviction for criminal confinement. Accordingly, the trial court's judgment below is affirmed.

Affirmed.

CHEZEM and STATON, JJ., concur.