**Loren Jay ADAMS, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0307–CR–568.**

Court of Appeals of Indiana.

March 16, 2004.

Sarah L. Nagy, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Loren Jay Adams appeals his convictions for Exhibition of Obscene Matter,[1] a class A misdemeanor and Distribution of Obscene Matter,[2] a class A misdemeanor. Specifically, Adams asserts that Indiana's Obscenity Statute, Indiana Code section 35–49–2–1, is unconstitutionally vague and that the evidence was insufficient to support the convictions. In support of his sufficiency claim, Adams argues that the materials were not obscene, that there is community acceptance of the materials that Adams displayed and distributed, and that it is not illegal to display obscene materials within the privacy of one's own home. Finally, Adams asserts that convictions for both offenses would violate double jeopardy principles. Concluding that Adams has waived the argument with respect to his constitutional claim regarding vagueness of the Obscenity Statute, that the evidence was sufficient to support the convictions and that no double jeopardy violation occurred, we affirm the judgment of the trial court.

## FACTS[3]

Sometime in January 2002, Indianapolis police detective Timothy Blackwell became involved in an undercover investigation regarding Adams's alleged distribution, production and sale of obscene material. After communicating with Adams via the internet and on the telephone, Detective Blackwell and a female informant met with Adams at a bar on February 19, 2002. Detective Blackwell and the informant told Adams that they were interested in making sex videos because Adams indicated that he had previously videotaped group sex scenes.

Thereafter, all three went to Adam's residence, where Adams showed Detective Blackwell various images and video clips on his computer screen of a woman having

---

1. Ind.Code § 35–49–3–1.

2. I.C. § 35–49–3–1.

3. We heard oral argument in this case in Indianapolis on February 17, 2004. We commend appellate counsel for their most able presentations.

sexual intercourse with a dog, as well as a woman having oral sex with a horse. Adams also indicated that he had "regular" pornography for sale, along with "fetish" and "animal" sex tapes. Tr. p. 23.

Detective Blackwell then paid Adams $200 for four videotapes. Those tapes showed females engaging in various sexual acts with animals.[4] According to Detective Blackwell—a vice investigator with over twelve years of experience—he had never seen videos of animal-human sex for sale in local video stores, and he had never been able to successfully purchase this type of video over the internet.

A search of Adams's residence was conducted and, on May 31, 2002, the State charged Adams with numerous criminal offenses, including class A misdemeanor distribution of obscene matter, which was based on the sale of the tapes, and exhibition of obscene matter based on the images that had been displayed on the computer.

Thereafter, Adams filed a motion to suppress evidence that the police unlawfully seized from his residence including certain papers, a handgun, videotapes, a computer, computer accessories and marijuana. The trial court ultimately granted Adams's motion because the probable cause affidavit for the search warrant failed to sufficiently allege that the confidential informant was credible and reliable. Appellant's App. p. 54. As a consequence, the State proceeded to trial only on the Exhibition and Distribution charges. Following a trial by court, it was determined that the material at issue was obscene. Additionally, the trial court found that the material appealed to the prurient interests in sex and that it lacked serious literary, artistic, political and scientific value. As a result, Adams

was found guilty of both offenses and was sentenced to concurrent terms of 180 days on each count Adams now appeals.

### DISCUSSION AND DECISION

#### I. Constitutionality of Obscenity Statutes

■ Adams first contends that his convictions must be reversed because Indiana's obscenity statute is unconstitutionally vague. Specifically, Adams argues that Indiana's obscenity statute fails to give the type of notice that would enable an ordinary citizen to comprehend precisely what conduct is prohibited.

■ Generally, a challenge to the constitutionality of a criminal statute must be raised by a motion to dismiss prior to trial, and the failure to do so waives the issue on appeal. Ind.Code § 35–34–1–4; I.C. § 35–34–1–6; *Payne v. State*, 484 N.E.2d 16, 18 (Ind.1985); *Smith v. State*, 727 N.E.2d 763, 766 (Ind.Ct.App.2000). Here, Adams failed to file a motion to dismiss, and he did not object to the constitutionality of the statute at trial. As a result, Adams may not challenge the constitutionality of the statute for the first time on appeal, and the issue is waived.

#### II. Sufficiency of the Evidence

■ Adams next contends that the evidence is insufficient to support his convictions. Specifically, Adams claims that the materials he displayed and sold to Detective Blackwell were not obscene and that there is community acceptance of them. Additionally, Adams asserts that the conviction for exhibiting the materials may not stand because he displayed the materials to Detective Blackwell in the privacy of

---

4. According to the probable cause affidavit, the videotapes show women having sexual intercourse with dogs, horses, and other barn-yard animals, and performing fellatio on dogs and horses. Appellant's App. p. 20.

his own home and the United States Supreme Court's opinion in *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), protects such conduct.

■ We first note that with respect to sufficiency of the evidence claims, this court will affirm a defendant's conviction if, considering only the probative evidence and reasonable inferences supporting the trial court's judgment, and without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Rogers v. State*, 741 N.E.2d 395, 396 (Ind.Ct.App.2000), *trans. denied.* Finally, evidence is insufficient to convict only when no rational fact finder could have found the defendant guilty beyond a reasonable doubt. *Bradford v. State*, 675 N.E.2d 296, 298 (Ind.1996). When sufficiency challenges are made to convictions for obscenity offenses, we note that an obscenity determination may be based solely upon the fact finder's viewing of the allegedly offensive material. *Lewis v. State*, 726 N.E.2d 836, 841 (Ind.Ct.App. 2000), *trans. denied.* That is, the State is not required to submit expert testimony on community standards, or show that no reasonable person would find value in the material. *Fordyce v. State*, 569 N.E.2d 357, 363–64 (Ind.Ct.App.1991).

■ In addressing the issues that Adams presents today, we note that obscenity is not protected speech under the free speech clause of the Indiana Constitution, *Fordyce*, 569 N.E.2d at 360–61, and the genesis of Indiana's statutory definition of obscenity is the tripartite test developed by the United States Supreme Court in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973):

> The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, *Kois v. Wisconsin, supra* [408 U.S. 229] at 230 [92 S.Ct. 2245, 33 L.Ed.2d 312 (1972) ]; ... (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Id.* at 24, 93 S.Ct. 2607. Shortly after *Miller* was decided, the Indiana legislature codified almost verbatim the *Miller* obscenity standard. *See* 1975 Ind. Acts Pub.L. No. 341–1975. Only slightly revised since its original enactment, Indiana Code section 35–49–2–1 currently provides that:

> A matter or performance is obscene for purposes of this article if:
>
> (1) the average person, applying contemporary community standards, finds that the dominant theme of the matter or performance, taken as a whole, appeals to the prurient interest in sex;
>
> (2) the matter or performance depicts or describes, in a patently offensive way, sexual conduct; and
>
> (3) the matter or performance, taken as a whole, lacks serious literary, artistic, political, or scientific value.

This statute makes it clear that a person of ordinary intelligence can understand what constitutes a "prurient interest in sex" or what constitutes a "patently offensive" depiction of sexual conduct. *See Porter v. State*, 440 N.E.2d 690, 693 (Ind.Ct. App.1982). The *Miller* test remains the accurate gauge with respect to obscenity cases under the first amendment, and we have previously upheld the constitutionality of our obscenity statute. *State v. Virtue*, 658 N.E.2d 605, 608–09 (Ind.Ct.App.1995), *trans. denied; Fordyce*, 569 N.E.2d at 360–62. Turning to the merits here, Detective Blackwell testified that Adams showed him

video clips on his computer of women engaging in sexual intercourse with dogs and performing oral sex on a horse and other animals. Tr. p. 20–22. The trial court then specifically found that Detective Blackwell was a "very credible witness." Tr. p. 119. In our view, given the nature of the materials that were exhibited to Detective Blackwell, it was within the fact finder's prerogative to find them obscene within the meaning of the statute. As a result, we decline to set aside the trial court's determination that the images shown to Detective Blackwell satisfied the definition of obscenity in accordance with Indiana Code section 35–49–2–1.

■ Our resolution of Adams's sufficiency claim does not stop here, however, inasmuch as he goes on to argue that the conviction for exhibiting the materials must be vacated because he displayed the images at his own residence. In support of this claim, Adams directs us to *Stanley v. Georgia* where the United States Supreme Court held that "the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime." 394 U.S. at 568, 89 S.Ct. 1243. As the Stanley court further noted, "If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch." *Id.* at 565, 89 S.Ct. 1243. While Adams would have us believe that he never left the realm of "private possession" when he showed the materials to Detective Blackwell and that the rationale espoused in *Stanley* should control the outcome here, we must disagree. To be sure, the evidence reflects that Adams displayed the images on his computer screen with the primary purpose of enticing Detective Blackwell to make a purchase of the videotapes that he offered for sale. We decline

to hold that such a commercial venture falls within the ambit of *Stanley.*

In *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), a complaint was filed against the owners and managers of two "adult" theaters in Georgia alleging that they were exhibiting to the public, for paid admission, two allegedly obscene films contrary to Georgia law. *Id.* at 50, 93 S.Ct. 2628. The trial court dismissed the complaints holding, among other things, that the display of the films was constitutionally permissible because the defendants provided reasonable protection against the exposure of the films to minors. *Id.* at 53, 93 S.Ct. 2628.

When the case eventually reached the Supreme Court, it was observed that the states have a legitimate interest in regulating commerce in obscene material. *Id.* at 57, 93 S.Ct. 2628. Moreover, it was recognized that a commercial theater cannot be equated with a private home. *Id.* at 65, 93 S.Ct. 2628. While it cannot be said that Adams's residence qualified as a "commercial theater," *Paris Adult Theatre* went on to recognize that the right of privacy encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation and child rearing. *Id.* None of the intimacies noted in *Paris Adult Theatre* exist in this case. Rather, as noted above, Adams desired to make a sale of obscene matter to Detective Blackwell in response to showing him the images on the computer. Thus, we decline to extend the *Stanley* rationale to the circumstances before us today. In our view, because the scenario here is more akin to the situation in *Paris Adult Theatre,* we reject Adams's argument and affirm his convictions.

We note, however, that this court is not upholding the convictions simply because Adams "affirmatively displayed these video clips to other people, namely Detective

Blackwell and the informant," as the State argues. Appellee's Br. p. 14. To be sure, there may very well be occasions where consenting adults view sexually explicit films or computer images in the privacy of the home. Whether such scenarios would pass muster under the *Stanley* rationale is left for another day.

### III. Double Jeopardy

■ Finally, Adams contends that he could not be convicted of *both* offenses in light of double jeopardy concerns. Specifically, Adams asserts that one of the convictions must be vacated because the offenses in this case were "parts of a continuous criminal design and [were] inspired by the same criminal intent." Appellant's Br. p. 14. Therefore, Adams argues that convicting him of *both* offenses violates double jeopardy prohibitions.

■ In addressing this issue, we note that in accordance with the test announced in *Blockburger v. U.S.*, a defendant's conviction upon multiple offenses will not be precluded by double jeopardy principles under the federal constitution if each statutory offense "requires proof of an additional fact which the other does not." 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *See Peckinpaugh v. State*, 743 N.E.2d 1238, 1242 (Ind.Ct.App.2001), *trans. denied* (recognizing that *Blockburger* remains the standard for judging double jeopardy claims under the federal constitution).

■ Additionally, we note that Indiana courts have "long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson* [v. State, 717 N.E.2d 32 (Ind. 1999)]." *Simmons v. State*, 793 N.E.2d 321, 327 (Ind.Ct.App.2003). Our supreme court employed Justice Sullivan's analysis

from *Richardson* and concluded that five situations will violate the double jeopardy prohibition of the Indiana Constitution. *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind.2002) (citing *Richardson*, 717 N.E.2d at 55 (Sullivan, J., concurring)). Quoting from Justice Sullivan's concurrence in *Richardson*, the *Guyton* court noted that the following situations violate Indiana's double jeopardy clause: (1) "conviction and punishment for a crime which is a lesser-included offense of another crime for which the defendant has been convicted and punished"; (2) "conviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished"; (3) "conviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished"; (4) "conviction and punishment for the crime of conspiracy where the overt act that constitutes an element of the conspiracy charge is the very same act as another crime for which the defendant has been convicted and punished"; and (5) "conviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished." *Id.*

With respect to the application of the *Blockburger* test, it is apparent that the exhibition conviction only required proof that Adams "showed" the obscene material—a fact that is not required for the distribution conviction. Moreover, the other conviction required the State to show that Adams did in fact distribute the obscene matter—an element not required for the exhibition offense. *See Isaac v. State*, 439 N.E.2d 1193, 1194–98 (Ind.Ct.App. 1982) (upholding convictions on two counts of exhibiting an obscene performance and

one count of exhibiting obscene matter where the defendant showed some boys part of an obscene film, showed them obscene photographs, and then showed them the rest of the film).

In this case, the evidence demonstrated that Adams showed Detective Blackwell the obscene materials on his computer in order to support the exhibition conviction. On the other hand, the evidence showed that it was the sale of the tapes that was used to support the conviction for the distribution offense. Moreover, there has been no showing that the images displayed to Detective Blackwell that were depicted on the computer screen were identical to those contained in the films.

While the *sale* of the four videotapes to Detective Blackwell surely constituted but one act of distribution of obscene matter, *see American Film Distributors, Inc. v. State,* 471 N.E.2d 3, 5 (Ind.Ct.App.1984), *trans. denied,* a second, distinct criminal act was committed when he displayed the obscene video clips and images on the computer to Detective Blackwell. That is, the images were shown, some conversation ensued and money was eventually exchanged for the tapes, thereby culminating in the purchase and subsequent distribution of the obscene material. In light of these circumstances, we cannot say that Adams's conviction for the act of displaying obscene images on his computer and then selling obscene videotapes to Detective Blackwell constituted double jeopardy. Moreover, Adams has failed to show that there is a reasonable possibility that the evidentiary facts used to establish the essential elements of one offense also established all of the essential elements of the second offense. *See Spivey v. State,* 761 N.E.2d 831, 833 (Ind.2002). Inasmuch as independent evidence was presented to support each conviction at trial, Adams has failed to demonstrate that his convictions

violated double jeopardy principles under the Indiana Constitution. Thus, there was no error.

### CONCLUSION

In light of our disposition of the issues set forth above, we conclude that Adams has waived his constitutional challenges to the obscenity statute and that the evidence was sufficient to support Adams's convictions. Finally, we conclude that entering a judgment of conviction as to both offenses was not violative of double jeopardy principles.

The judgment of the trial court is affirmed.

NAJAM, J., and MAY, J., concur.